Good morning. It's our final day of oral argument for this week. We have one of our more difficult days. Four cases to hear this morning. Counsel, we're familiar with your briefs. We've read your briefs. The authorities cited in your briefs, at least portions of the record. You only have 15 minutes per side. So get straight to the heart of your argument. We're probably going to have questions. If you're answering a question from the court and the red light shines, you can finish your answer. But otherwise, pay attention to the red light. When it shines, it's time to finish up. Judge Luck and I really appreciate our colleague from the Southern District of Alabama, Judge Terry Moore, being with us this week. Judge Moore served for many years as a federal magistrate judge on the United States District Court for the Middle District of Alabama before he was appointed to the Southern District of Alabama. So he's already familiar to us, but we're really pleased to have him now as a colleague on the District Court and for continuing the custom of our court, the long tradition of our court, of having district judges in our court sit occasionally with us to assist us with our work. That's work that they take on over and above the work that they already have on the District Court. It gives them an opportunity to see how we do our work and it gives us an opportunity to hear from them about their perspective about how our precedents work or maybe don't work sometimes on the ground. So thank you for being with us, Judge Moore. We will begin with the state of Glenn Mitchell Hand versus the Florida Department of Corrections, Mr. Anderson. Good morning. May it please the court. My name is Adam Anderson and I represent the appellant in this case. The issue in this case is whether plaintiff's third amended complaint sufficiently pled a plausible 1983 claim against the appellee's Dr. Juan Santiago and Centurion of Florida, which would have allowed amendment rather than dismissal. We believe that the facts pled do sufficiently plead a 1983 claim in line with the law of the circuit. Well, Counselor, I was looking at the complaint and it's a very lengthy complaint but it showed any number of times where the provider provided care. So why shouldn't the district judge rule as they did that just he presented and was treated? Simply providing care is not the threshold. We need to provide care for the serious medical need that is at issue and that is what is the problem here, Your Honor. Well, it makes it, it makes your burden harder, which is what I think my colleague is driving at and it's my question too because what we've said is there's no care cases in which case the burden is a lot less for you and then there's care cases and in that case you have to show what appears to be something extra, which either the care is so grossly inadequate that no doctor or provider would give that sort of care, that it was cursory to the extent that it was almost no care at all, so on and so forth. What theory are you going under and where would you say those allegations are sufficient? First, Your Honor, I believe that both of those apply. The cursory care is really the main driving force here. I have to say, you know, if that's the case, I can't help but agree with my colleague, Judge Moore, that you read this complaint and while it appears there was a mistake made, I don't think there's any question about that, about what the diagnosis should have been, we can't say that it was cursory. I mean, there are nurses and doctors that are seeing him constantly throughout the day, providing medicine, providing care. It isn't as if he left, this isn't a case where they threw him some tile and all put him in the corner and said, see you later. That's just not what this is. Well, I respectfully disagree, Your Honor. It is more or less that because what we have here is sepsis, glaring signs of sepsis as early as Friday. Blood was drawn Friday morning. Those results were ready and available for review Friday evening, along with the respirations, blood pressure, fevers that is accompanying this high white blood cell count. Let me tell you where I am and it's really a friendly question, at least in part, and that is, at least with respect to Santiago, I read paragraph 145 and what you've alleged is at the time Santiago saw a hand on sepsis, observed hand who was exhibiting known signs and symptoms of sepsis, reviewed the nursing notes that clearly indicated hand was continuing to deteriorate and continued to exhibit signs and symptoms of a severe infection and sepsis. Knew the center was not equipped to handle a patient with sepsis and that a patient with sepsis was to be transferred to an outside facility to receive a higher level of care and chose to do nothing other than to instruct nursing staff to continue to monitor hand. To me, that is the strongest case you have for reversal, are those allegations which to me, the Supreme Court said long ago in Farmer, whether a prison official had the requisite knowledge of a substantial risk is a question of fact. Subject to a demonstration in the usual ways, including inference from circumstantial evidence, a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. And that is the essence of my appeal, Your Honor, and I believe that that was what I was trying to explain is the cursory care. This is really no care at all, isn't it? What's alleged and what I just read is no care at all. Just someone who knows what the signs of sepsis are has a patient who's clearly exhibiting them and does nothing. Correct, Your Honor, and that is deliberate indifference per the case law. And at the pleading stage, those allegations must be accepted as true. I want to back up for a little bit. We're going to explore exactly that, the nothing of the one specific paragraph at the one specific time, as opposed to the four days in which he was seen by any number of medical professionals, but we'll get there. The amendment is, I'm sorry, the motion, really we're focused on the order denying the motion to amend, leave to amend, correct? That's really what the error that you're focused on? Correct, Your Honor. Okay, and I understand that because the third amended complaint is your best factual basis. That's your, this is the best case we have for why we should win, right? Correct. As I understand it, the district court gave two bases in which to, in which it denied the motion. One is futility, meaning you can't win even under these allegations and that's what you've come to us to tell us that's wrong, that we do win under these allegations, right? Correct. There was also a second basis as I read the district court's order, correct? I believe that it was one issue, Your Honor. So let's take a look at the order. So the order is, the order denying leave for motion to amend, which is, I believe, docket entry 70, correct? Correct. Okay. So, although leave to amend should be freely given, courts may deny leave when amendment would be futile. This is on page one. Here, the amendment would be futile, okay? Correct. That's the first basis. Then the top of page two states, courts may also deny leave to amend when a plaintiff has already had an opportunity to cure and has not done so. That happened here. The estate had an opportunity for a second but it did not do so. I dismiss the second amended complaint for substantially the same reasons as the first. This provides a separate and independent reason to deny the motion. And, Your Honor, I believe that's the same issue because the futility was exactly what was identified. Does that mean your argument is if we, in fact, alleged a claim, then that has to be wrong? Correct. Okay. So let's back that up because none of that is right. What we've said, as I understand our amendment, our leave to amend, you can deny leave to amend if it's futile, if there's undue delay, if we've given repeated chances to do so. So here, what the district court said is you had a first amended complaint. I ruled that it should be dismissed, and I told you the reasons why it should be dismissed. And then you filed a second amended complaint, and I told you why it was insufficient. And now you filed a third amended complaint. Now, what you've told us on appeal, as I understand it, correct me if I'm wrong, that the third amended complaint does allege allegations. Is there anywhere in your brief where you've said that the second amended complaint didn't repeat the same errors as the first? Yes. Because that's the basis. Show me what page exactly that you make that point. I don't have the ability to get down for your reply and come back up. I want to know the page where you make the argument that no, the district court is wrong, that the second amended complaint, not the third, the second amended complaint did not repeat the same errors as the first amended complaint. Your Honor, the second amended complaint was the voluminous complaint that started to set forth the actual signs and symptoms that were exhibited by Mr. Hand while he was under the care of the patient during the time. These cases are very unique. We hear about whether it was the third amended complaint was futile, right? Correct. The refusal to allow the third amended complaint, as I understand your argument, is, your argument is, well, it actually did allege deliberate indifference. Correct. So you can't say that the previous deficiencies were repeated if this time it sufficiently alleged deliberate indifference. Absolutely. So I want to get back to the original point and about this quote unquote paragraph 145. As I understand it, throughout the complaint, it alleges the following, that a doctor was seen, a doctor saw the patient at least once a day, nurses saw him every day multiple times a day, full blood tests were ordered and taken, he was given fluids and Ensure for dehydration, he was given Zofran for nausea, he was given protonics for stomach acid, he was given oxygen because his oxygen levels went, he was given Tylenol for fever, and he was given the antibiotic Vancomycin, and I apologize for getting that wrong, which goes to intestinal infections. Is anything I said incorrect? No, that's correct. Okay, that doesn't seem like no care to me. Now, it may be that they messed up. It may be that he really had sepsis, they should have known he had sepsis, and they didn't diagnose it Is that not negligence instead of deliberate indifference? That is a question of fact that's going to need an expert determination to influence upon. What we've said there is that he knew that it was. You're telling me a court of law can't distinguish between negligence and deliberate indifference as a matter of law? Assuming the truth of every allegation that I just read right there? Assuming the truth of the allegation is that no treatment was provided with respect to the serious medical need that is that issue? I just read to you and you agreed, because you have to, that every one of those things was in fact provided. There's more, but that that list is there. It was, but that was directed towards a gastroenteritis. That was not directed towards sepsis. They messed up the diagnosis. Then when the information becomes available, more information becomes available on Friday evening into Saturday, into Sunday, into Monday. Nothing was done. No transfer was made. That is in fact a deliberate indifference, and that is what distinguishes between negligence and deliberate indifference. Counsel, that's not true. A transfer was made. It was, it was just what you, what you claim is it should have been made two days earlier instead of the day it was made, correct? Correct. The transfer was made when he seized out and lost all function. Again, that's not true, Counsel. According to the allegations, he was in distress. They brought him to Shands. He was in Shands for two weeks. They tried to revive him. They weren't able to. Isn't that what the allegations are? The allegation was that he had a stroke and had a seizure in custody, then was transferred and died. He never came back over those two weeks and died June 1, 2017. Okay, Mr. Anderson, let's hear from Mr. Bentley. You've saved a few minutes for rebuttal, Mr. Anderson. If you could find that part of the brief for me, that'd be real helpful. Thanks so much. Good morning, Your Honors, and may it please the Court. Michael Bentley on behalf of the Appalachian Centurion of Florida and its medical providers, including Dr. Juan Santiago. The District Court correctly denied leave to file a third amended complaint, and its judgment should be affirmed on either of the two alternative grounds given by the District Court. Well, if the complaint sufficiently alleged delivered indifference, then I don't think you can say that was a repeat of the earlier problems. So let's get to the heart of what you argued was the deficiency here. And you say that although the estate alleged Santiago knew the signs and symptoms of sepsis and observed that Hand was exhibiting the signs and symptoms of sepsis, the estate fails to allege Santiago actually drew the inference Hand had sepsis requiring different treatment than what was already being provided. The problem I'm having with that is what the Supreme Court said in Farmer, which is whether a prison official had the requisite knowledge, that is whether they drew the inference, is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. It seems to me that the allegations here allow that inference based on what are allegations of circumstantial evidence. Yes, Judge Pryor, and I would answer that in two ways. First, I would say we're at the pleading stage, and certainly Farmer is relevant, but so is Ashcroft v. Iqbal. And you can't just make general conclusory allegations about knowledge. Iqbal is very clear about that. I don't know what's implausible about the idea that a doctor would be trained to know the signs and symptoms of sepsis and that when presented with all those signs and symptoms, did nothing and therefore was deliberately indifferent. I don't know what about that is implausible, that where Twombly and Iqbal help you. Well, Your Honor, if you're just looking at paragraph 145 in isolation and you're reading those statements, perhaps you might have, that might be consistent with deliberate indifference. But what Twombly and Iqbal say is that you have to look at the and you get to what the nub of the complaint is, to use Iqbal's term. Well, getting to the nub of the complaint, I mean, I don't know Judge Windsor, and I'm sure he's a fine judge, but I doubt he's a medical doctor. And, you know, the complaint on its face shows that there were a lot of things done, but how is a district judge to know that this isn't a case of somebody putting a band-aid on a gunshot wound? Well, the way you know that, Judge Moore, because we're not at a summary judgment stage, we're at the very nascent phase of the case. That's correct, but Twombly and Iqbal, Your Honor, say that the constitutional governing standards still matters at the pleading stage. And so we certainly agree, and Judge Windsor found, that the pleadings were sufficient to state a claim for medical malpractice. Those state law claims still exist. But this Court has been very clear in its deliberate indifference precedent that we don't want to constitutionalize what are really state law negligence claims. And I think... But, and I agree with you that the allegations do point toward a negligence claim, but how is a district judge to know that not only is it negligence, but this treatment, though it may be treatment, isn't putting a band-aid on a gunshot wound to the chest? Well, I think you have to look at the entire factual context, and let me just walk through what the complaint's allegations are. First of all, the complaint alleges that the prison medical officials detected and cured Mr. Pan's cancer. Later, he presented with signs of nausea and vomiting. He saw a nurse twice. He was ultimately... So you're saying that if I treat somebody in the past and they recover, maybe despite my care, and then they fall into my care again, and I put a band-aid on a gunshot wound to the chest, that that's not deliberate indifference since I just did something to treat? Well, I would say the band-aid on the gunshot wound to the chest is an entirely different case, Your Honor, and certainly... But my question is, how would a district judge who is not a doctor know that this treatment isn't the equivalent of that, given these symptoms? Shouldn't he have allowed the case to go further, some discovery to be done, and then perhaps at some re-judgment, he might conclude that there's not enough here to make out a claim of deliberate indifference and then deal with that at that point? Well, I think that's exactly what Twombly and Iqbal warn against, is sending claims that are clearly deficient through discovery to allow, hopefully, to allow the plaintiff to find some facts that may... Here, again, I think what Judge Windsor did is exactly what you would expect a district judge to do at the Twombly and Iqbal stage. Take note of the constitutional standard, which is a very steep hill to climb, this Court has said, in Hoffer and Kehon, and apply the well-plaid facts under that standard here, and then get to what the nub of the complaint is. When you read this complaint, I think it's pretty clear that there's medical negligence. That's what's being alleged, and Judge Windsor using, again, going back to Iqbal, context-specific judicial experience and common sense, read the entire complaint, and made the decision that even if it's medical negligence, it doesn't climb the steep hill to get to deliberate indifference. Well, how would you get to the deliberate indifference? I mean, what's got to happen? What should have been said here that would have cleared that very low standard of Iqbal and Twombly, which you really kind of have to stumble over? Well, you would have to plead something that gives a plausible inference that Dr. Santiago was ignoring the patient. He actually drew the inference, so he has to like exclaim to a nurse, oh my gosh, these are all the signs and symptoms of sepsis. We can't do anything about that here. Well, you know, to take the gunshot Band-Aid example, so if the plaintiff alleges that the doctor was trained to know the signs and symptoms of a gunshot wound, clearly exhibited the signs and symptoms of a gunshot wound. The nurse's notes reflected that he had been shot with a gun, and he decided to put a Band-Aid on it. Would that be sufficient? That would not be sufficient, Your Honor. But I think that's quite different from what we have here, where a patient is admitted to the hospital. There's three days, according to the allegations, May 13th through 15th, during which the patient is under Dr. Santiago's care. During that time, he's being attended by nurses. He's receiving intravenous antibiotics that are treating an infection. He's continuously monitoring. He's telling the nurses to pay close attention. He is continuing the course of treatment that another doctor, upon admission to the hospital, prescribed for this particular patient. I don't think you can read those allegations, the well-pledged factual allegations, and conclude that Dr. Santiago was doing nothing to care for this patient. Now, certainly, you can conclude that he made a mistake, and that's unfortunate. And even if you read the allegations, what the allegations are, the nub of the complaint, is that he prescribed an incorrect antibiotic, or that he failed to detect a worsening infection. That's a mistake. No one's here to deny that. But the question is, when you have a plaintiff, an inmate, who is receiving this much medical attention, and receiving this much care by Dr. Santiago and others, can you plausibly infer that it's deliberate indifference? And I think it's important when you take, when you read Ashcroft versus Iqbal, it's not just pleading something that's consistent with deliberate indifference. Because if you look at, if you plead something that's consistent with deliberate indifference, then the court naturally looks to more likely explanations, to use Iqbal's term. And here, the more likely explanation is the obvious one. Dr. Santiago made a mistake. That happens in medical care, unfortunately. But the obvious explanation is not to jump immediately to deliberate indifference. Well, but with every time where you're going to have a deliberate indifference case, where a doctor is involved, you're going to have some degree of malpractice that precedes it. So every case of deliberate indifference is going to have at its base some degree of med mal. And shouldn't we allow the facts to be developed a little bit more by discovery? And perhaps if the district judge is of the same opinion at summary judgment stage, then dispose of it that way. I mean, to a certain extent, don't you think we've gotten past Iqbal and Twombly and we now are in a situation where discovery should have been allowed to go full? I don't, Your Honor. And the reason is because when you have allegations this specific, this is the third amended complaint, which is based on a diligent investigation by Plaintiff's counsel, medical expert opinions, this is as good as the facts are going to get. So I think at this point, it's fair to apply Twombly and Iqbal as they're supposed to be applied. There's nothing to suggest that discovery would elaborate or make the case better for the plaintiff. Well, some medical authorities might agree based on just what's pled here. This was beyond just mere gatekeeping function and later the district judge could and decide whether or not that is an opinion that should be allowed because you would have a factual dispute at that point and for which trials are made. So at this early stage with the number of allegations, how could this not nudge it past the line of Iqbal and Twombly? Well, Your Honor, I think it's not just the number of allegations but the entire factual context using judicial experience and common sense and reading the complaint to say does this really climb the steep hill of deliberate indifference? What if the plaintiff presents the expert opinion testimony of several experts who say that the amount of care that was provided here was so cursory as to amount to no care at all given the obvious signs and symptoms of sepsis? I think if you had medical experts expressing that opinion, now of course experts... And I say they did. Okay, taking your hypothetical, of course that doesn't comment on the constitutional standard of deliberate indifference. But they can't testify to the ultimate question, right? Correct. But that's what their testimony is, that it was so cursory as to amount to no treatment at all. I think if you had that opinion supporting this complaint, which I don't think that you do, but if you... They don't have to present an expert opinion with a complaint. That's correct, Your Honor. If you did, I think that would be a medical opinion about the care provided. It wouldn't be necessarily something that the court had to accept carte blanche as to the constitutional standard. Before my time is up, I would, if I can... It would present a question of fact for a jury, wouldn't it? Pled in the context of this much care... If that was the expert opinion testimony. If you had an... And it was admissible. It satisfied all the Dahlberg requirements. Yes, I think if you had an expert opinion that said that attached to the complaint, then you could go through. But if I can, I want to go back to the point that there are two alternative grounds for Judge Windsor's decision. One of which is failure to cure based with prior complaints, despite the judge dismissing the complaint twice. If you look at this court's opinion in Sapupo v. Allstate, first of all, if there are alternative grounds given, you have to appeal and challenge all of those alternative grounds. Or if you don't, the alternative ground is due to be affirmed. Here, Judge Windsor clearly made two separate holdings. The first has not been challenged. And even if it... Here's my understanding of the problem with that. Their argument is we sufficiently allege delivered indifference. If they're right about that, then he's necessarily wrong that it failed to cure the deficiencies. But he gave an alternative holding. That's the alternative holding. These are repeated failures. And if their argument is right, that in fact it alleges it, then he has to be wrong about the alternative ground, doesn't he? I don't think so, Judge Pryor, because the alternative ground is separate from the futility argument. This court's cases clearly set out repeated failure to cure deficiencies as a separate reason to not permit a third amendment complaint, no matter how good it might be. If the district judge has entertained multiple complaints and dismissed them already, there's not a requirement in case law that he entertain further amended complaints. And that's a separate ground that's subject to abusive discretion review. Okay, Mr. Bentley. Thank you. Thank you, Your Honor. We're going to hear from Mr. Anderson. He's got three minutes. May it please the Court. Your Honor, I took the time to try to address that. I am unable to find an explicit reference in the briefing with respect to that. However, the futility with the second amendment is the same futility with the third amendment. And that was the reasons for the court denying our leave to amend and granting us the opportunity to amend the case and proceed with discovery. It seems to me I forfeited anything about the dismissal of the second amended complaint. We're really just here about the third. Correct, Your Honor. And I believe that we've tailored our issues as well along the way to say that, you know, it is really a case of deliberative difference against Dr. Santiago and Centurion of Florida. See, I think you have problems with Centurion. We really haven't talked about that at all this morning. You don't have a pattern of constitutional violations as to them. To me, I think what we're really talking about is Santiago. And I'm happy to answer any questions with respect to the Centurion. However, they took over for the predecessor, Corizon, who did have a constitutional history of violating a prisoner's and the testimony. There were some contractual violations with the state of Florida, not constitutional violations. I do believe that there is many cases in this circuit and many outside the circuit where Centurion did, in fact, violate. Well, the real question is, did you allege, did you allege a pattern of similar constitutional violations that could be called deliberate indifference? So, I'm a part of that. I do believe, Your Honor. And it's difficult at this stage as well without having discovery to support this. It's where you have to say, you know, there is a pattern in practice and a factual basis to support that is the medical test, the blood result that sat around for days. Why was that not read? Why was that not brought to the attention of the doctor or was it brought to the attention of the doctor? Yeah, things like, for example, Centurion failing to have policies ensuring either the timely return of lab results or doctor's access to inmates' medical charts. That's not a pattern of constitutional violations. I believe that the culmination of these instances can lead to a custom or pattern of practice that could be, in fact, a constitutional violation which needs additional discovery. I think there's also, to piggyback on that, a causation problem. In other words, your allegations are, and Judge Pryor has made the case better than anyone else could possibly make it, that the doctor didn't look at blood results. He didn't look at the nursing notes. So, it isn't a matter, as I understand it, of not getting blood results in time or not getting the nursing notes to doctors. This doctor didn't look at it, according to your allegation. So, I'm having a causation issue with regard to this, even if you can get over the hurdle that Judge Pryor, the Chief Judge, identified. I respect your opinion, Your Honor. I'll rest on the briefing on that and my time is up. Thank you, Mr. Anderson. We'll move to the next case, Captain Jax Crabshack v. Bigford. I appreciate your help. Thank you, Your Honor. Thank you.